### UNITED STATES v. LOUISIANA IMP. CO., Inc. et al.

No. 770.

United States District Court
E. D. Louisiana, Baton Rouge Division.

July 16, 1953.

17. See note 15, supra.

18. See Gilman v. Central Vermont Ry. Co., 1919, 93 Vt. 340, 107 A. 122, 16 A.L.R. 1102; 38 Am.Jur. § 166, p. 839.

736

John N. McKay, U. S. Atty., and G. Harrison Scott, Asst. U. S. Atty., New Orleans, La., for plaintiff.

George S. Womack, Baton Rouge, La., for Louisiana Imp. Co. Inc., defendant.

Breazeale, Sachse & Wilson, Baton Rouge, La., for J. Winston Bradley, defendant.

CHRISTENBERRY, Chief Judge.

The above entitled matter having been tried to the Court without a jury, after due consideration of the pleadings and the evidence presented, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

#### I.

A complaint was filed against Louisiana Improvement Company, Inc., a corporation organized under the laws of the State of Louisiana with its principal office in the Parish of East Baton Rouge, State of Louisiana, and against an individual by the name of J. Winston Bradley, a resident of Hammond, Louisiana, for overcharges in the sale price of certain houses constructed by the defendant J. Winston Bradley.

#### II.

On the 19th day of November, 1952, the government dismissed the complaint as against Louisiana Improvement Company, Inc., leaving as the sole defendant J. Winston Bradley.

#### III.

On November 19, 1952, the government dismissed the complaint insofar as it pertained to overcharges in the sale price of houses purchased by W. D. Avant, R. J. Pourciau, Oliver Moore, P. W. Beck and W. J. Freemin, and maintained its claim for the remaining purchasers listed on Exhibit A of the complaint, viz., F. W. Morris, N. F. Fortenberry, H. H. Fesden, H. L. Rendon, E. J. Atkinson, G. C. Brian, Jr., L. J. Bergeron, T. J. Harkins and Grover Roberts.

#### IV.

Pursuant to the provisions of Priorities Regulation 33 the Louisiana Improvement Company, Inc. was granted an authorization and priorities assistance on or about February 12, 1946, for the construction of twenty-eight (28) dwellings in the Resubdivision of Suburb Istrouma, Baton Rouge, Louisiana, more particularly described as Lot "A" through Lot "N", Block 92, and Lot "A" through Lot "N", Square 95, such authorization being identified by F.H.A. Project Serial No. 66–22–000106.

#### V.

The authorization contained and had attached thereto certain plans and specifications which the Louisiana Improvement Company, Inc. agreed to and was obligated by law to follow in the construction of dwellings construction of which was authorized thereby.

#### VI.

The authorization set out a maximum sales price of $9,000.00 per unit (house) which the Louisiana Improvement Company, Inc. was obligated to abide by.

#### VII.

On or about April 23, 1946, the Louisiana Improvement Company, Inc. and the defendant J. Winston Bradley entered into

an agreement under which the former transferred to the latter thirty-two (32) lots covered by the authorization together with priority materials and plans for the construction of dwellings thereon.

## VIII.

Thereafter, and prior to December 31, 1947, the defendant J. Winston Bradley constructed and caused to be constructed, dwellings on the several lots covered by the authorization without having said authorization transferred from the Louisiana Improvement Company, Inc. to J. Winston Bradley, nor having made application as set forth in Priorities Regulation No. 33 for the transfer of said authorization.

## IX.

J. Winston Bradley constructed and sold dwellings on the said lots and as an incident thereto the aforementioned authorization was used in acquisition of some materials by L. S. Simms, the plumbing contractor for the project. These materials obtained under said authorization were used in the construction of the houses built by J. Winston Bradley.

## X.

After J. Winston Bradley acquired the aforesaid lots he erected houses which were not in strict conformity with the approved plans and specifications submitted for the purpose of obtaining an HH priority authorization, nor did he sell all of said houses at or below the maximum sales price approved in the priorities authorization. The evidence, however, shows that the houses were constructed in accordance with amended plans and specifications by the Federal Housing Administration and the commitments issued thereon, and that all of the houses were sold at or below the appraised valuations approved by the Federal Housing Administration and the Veterans' Administration.

## XI.

Prior to the construction and sale of the houses, defendant made written application to the Federal Housing Administration for new commitments which were issued by the Federal Housing Administration based upon the amended plans and specifications. Further, the evidence shows that although the defendant did not apply for and obtain new priorities from the Housing Expediter, the evidence does show that L. J. Dumestre, Director of the Federal Housing Administration was agent for the Housing Expediter and in charge of the issuance of priorities and that the said Dumestre testified he would have issued said priorities if application therefor had been made since construction costs had substantially increased between the time of the issuance of the priorities to the Louisiana Improvement Co. Inc. and the time the houses were built by the defendant, and further, because the houses constructed by defendant were better houses than originally contemplated by the original priority.

## XII.

At no time prior to construction and sale of the dwellings did the defendant J. Winston Bradley apply for and obtain from the Federal Housing Administration an authorization and priorities assistance for the construction of dwellings on Lot "A" through Lot "N", Block 92, and Lot "A" through Lot "N", Square 95, Resubdivision of Suburb Istrouma in the City of Baton Rouge, State of Louisiana in his own name and on his own behalf. The evidence shows that Defendant Bradley was told by L. J. Dumestre it would not be necessary for any priority to be issued and that he could use the same one issued to Louisiana Improvement Co. Inc. for the construction of dwellings on the lots above designated.

## XIII.

The value of a garage as of February 4, 1946, the date of the application for preference rating, was Four Hundred Eighty and No/100 ($480.00) Dollars, as set forth on the Priorities Processing Report, made a part of said application.

## XIV.

The value of a floor furnace as of the date the plans were submitted for the Preference Rating was One Hundred Eight and No/100 ($108.00) Dollars.

## XV.

Defendant, on March 15, 1946, began the construction of a house which was sold to F. W. Morris on February 14, 1947, for the sum of $9,250.00, $250.00 in excess of the maximum sales price, and defendant omitted the construction of a detached garage, as required by the Priorities authorization, valued at $480.00, thereby making the net overcharge of $730.00. The house built by Bradley and sold to F. W. Morris was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XVI.

Defendant, on March 15, 1946, began the construction of a house which was sold to N. F. Fortenberry on February 20, 1947, for the sum of $9,250.00, $250.00 in excess of the maximum sales price, and defendant omitted the construction of a detached garage, as required by the Priorities authorization, valued at $480.00, thereby making the net overcharge of $730.00. The house built by Bradley and sold to N. F. Fortenberry was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XVII.

Defendant, on March 15, 1946, began the construction of a house which was sold to H. H. Fesden on May 5, 1947, for the sum of $8,950.00, $50.00 less than the maximum sales price, and defendant omitted the construction of a detached garage, as required by the Priorities authorization, valued at $480.00, thereby making the net overcharge of $430.00. The house built by Bradley and sold to H. H. Fesden was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XVIII.

Defendant, on March 15, 1946, began the construction of a house which was sold to H. H. Rendon on June 7, 1947, for the sum of $8,950.00, $50.00 less than the maximum sales price, and defendant omitted the construction of a detached garage, as required by the Priorities authorization, valued at $480.00, thereby making the net overcharge of $430.00. The house built by Bradley and sold to H. H. Rendon was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XIX.

Defendant, on March 15, 1946, began the construction of a house which was sold to E. J. Atkinson on April 30, 1947, for the sum of $8,950.00, $50.00 less than the maximum sales price, and defendant omitted the construction of a detached garage valued at $480.00, and the installation of a floor furnace valued at $108.00, as required by the Priorities authorization, thereby making the net overcharge of $538.00. The house built by Bradley and sold to E. J. Atkinson was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XX.

Defendant, on March 15, 1946, began the construction of a house which was sold to G. C. Brian, Jr., on April 28, 1947, for the sum of $9,129.00, $129.00 in excess of the maximum sales price, and defendant omitted the construction of a detached garage valued at $480.00, and the installation of a floor furnace valued at $108.00, as required by the Priorities authorization, thereby making the net overcharge of $717.00. The house built by Bradley and sold to G. C. Brian, Jr., was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XXI.

Defendant, on March 15, 1946, began the construction of a house which was sold to L. J. Bergeron on June 27, 1947, for the sum of $8,950.00, $50.00 less than the maxi-

mum sales price, and defendant omitted the construction of a detached garage valued at $480.00, and the installation of a floor furnace valued at $108.00, as required by the Priorities authorization, thereby making the net overcharge of $538.00. The house built by Bradley and sold to L. J. Bergeron was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XXII.

Defendant, on March 15, 1946, began the construction of a house which was sold to T. J. Harkins on February 11, 1947, for the sum of $9,250.00, $250.00 in excess of the maximum sales price, and defendant omitted the construction of a detached garage valued at $480.00 and the installation of a floor furnace valued at $108.00, as required by the Priorities authorization, thereby making the net overcharge of $838.00. The house built by Bradley and sold to T. J. Harkins was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XXIII.

Defendant, on March 15, 1946, began the construction of a house which was sold to Grover Roberts on June 28, 1947, for the sum of $9,150.00, $150.00 in excess of the maximum sales price, and defendant omitted the construction of a detached garage valued at $480.00 and the installation of a floor furnace valued at $108.00, as required by the Priorities authorization, thereby making the net overcharge of $738.00. The house built by Bradley and sold to Grover Roberts was built in accordance with the amended Federal Housing Administration commitments and complied with the plans and specifications approved by the Federal Housing Administration.

## XXIV.

J. Winston Bradley has not refunded to the purchasers aforesaid the net overcharges as set forth respectively, nor any part thereof.

## Conclusions of Law

### I.

Under the provisions of Section 2(a) (2) of the Act of June 28, 1940, § 301, of Title III of the Second War Powers Act, as amended, 56 Stat. 176, Title 50 U.S.C.A. Appendix, § 633, the Civilian Production Administration issued Priorities Regulation 33, effective January 16, 1946 (10 F.R. 15301), providing for the issuance of authorization and priorities assistance on applications duly and properly made on CPA Form 4386.

### II.

Subsequently Congress passed the Veterans' Emergency Housing Act, U.S.Code Congressional Service 1946, p. 199, which became effective May 22, 1946. Under and in accordance with the provisions of this Act, Priorities Regulation 33, issued and promulgated as aforesaid, was continued in effect, and on September 10, 1946, Housing Expediter Priority Regulation No. 5, embodying substantially the same regulations, was issued pursuant to the Act mentioned above. The Second War Powers Act, as amended, expired March 31, 1947, and the Veterans' Emergency Housing Act of 1946 expired December 31, 1947. Both Priorities Regulation 33 and Housing Expediter Priority Regulation No. 5 continued in full force and effect until December 31, 1947, when they were revoked. However, the priority provision of said Act expired on June 30, 1947.

### III.

On March 26, 1946, Veterans Housing Program Order No. 1 (11 F.R. 7409) was promulgated and made effective. This order provided that no person should begin construction, conversion or repair or the installation of fixtures of mechanical equipment in any construction, public or private, or accept an order for, sell or deliver materials, except in accordance with the terms of such order. (See VHP 1, Section (c) ). It provided that an authorization applied for and granted under the provisions of Priorities Regulation 33 or Housing Expediter Priority Regulation No. 5 should constitute a permit for such prohibited construction. The regulation concluded with the proviso that a person authorized or per-

mitted to do work restricted by such order must observe the restriction imposed on him by the authorization and by providing penalties for violations. Applications for permits and authorizations covering construction of dwellings were accepted and permits and authorizations granted by the Federal Housing Administration as authorized agent on Form CPA 4386 in accordance with the provisions of applicable portions of the several regulations mentioned above.

### IV.

■ The defendant did not literally comply with the provisions of Section (j) of Priorities Regulation 33 which reads as follows:

"(j) *Transfer of ratings forbidden.* No person to whom an HH rating has been assigned shall transfer the rating to any other person (as distinguished from applying the rating to purchase orders) and any transfer attempted is void. If for any reason a builder wishes to abandon a project and another builder wishes to continue with the project, the new builder should apply to the appropriate FHA office, attaching to his application a letter from the former builder or the representative of the former builder joining in the request for the assignment of ratings to the new builder."

Therefore, irrespective of the fact defendant was told by the representative of the Housing Expediter that the priorities issued in the name of Louisiana Improvement Co. Inc. could be used by him to construct the dwellings in question, there, nevertheless, was non-compliance with the above regulation, since the priorities were never actually reissued in the name of defendant Bradley.

### V.

■ The Priorities authorization as issued required that floor furnaces and detached garages be included in the sale price. The Priorities authorization was never amended in accordance with Section (1) of the Priorities Regulation 33, which reads as follows:

"(1) *Amendments and supplemental applications.* A builder may apply to the appropriate State or District Office of the Federal Housing Administration for an amendment to his approved application. If the amendment covers changes in the specifications of the proposed dwelling or dwellings or changes in the proposed sales price or rent (see Par. (g)(6) ), the request for an amendment may be made by letter in triplicate. If the request for an amendment is granted, the provisions of this regulation apply to the application as amended. * * *."

Therefore, the defendant did not have the authority to omit floor furnaces and detached garages even if it be considered that the priority authorization were validly transferred to him, which it was not.

### VI.

■ There was never an application, nor a showing of increased cost in constructing, warranting an increase in the sales price, as set forth in Section (7) of Priorities Regulation 33, which reads as follows:

"(7) *Requests for increases in sales prices and rents by builders.* A builder may apply to the Federal Housing Administration for an increase in the sales price or rent specified in the application before the house is sold (i. e., before title has passed) or initially rented. The application will not be approved unless he can show that he has incurred or will incur additional or increased costs in the construction over which he had, or has, no control, or if he can show that he will incur additional or increased costs in the operation of rented accommodations over which he has no control, and that these increased or additional costs will make it impracticable for him to sell or rent at the price or rent specified in the application. No increase in sales price or rent will be granted in excess of the increase in construction cost, or a proper proportion of it, or the increase in operating cost as the case may be. * * *"

Therefore, despite the fact that defendant applied to and obtained from the Federal Housing Administration new commitments based on increased construction cost, it is the opinion of this Court, in view of the above Regulation, that defendant was obliged to obtain from the same Federal Agency, as agent of the Housing Expediter, amended or new priorities authorizing him to sell the dwellings for prices in excess of the maximum provided in the original priorities.